**JUDGE ROCHON**

# 25 CV 0006 9

RIEMER HESS LLC
Attorneys for Plaintiff
275 Madison Avenue, 26th Floor
New York, New York 10016
(212) 297-0700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JANE DOE,<br><br>                         Plaintiff,<br><br>          -against-<br><br>FIRST UNUM LIFE INSURANCE COMPANY,<br>and PROVIDENT LIFE AND CASUALTY<br>INSURANCE COMPANY,<br><br>                         Defendants. | Index No. 24-mc-610<br><br>**COMPLAINT**<br><br>ECF CASE |

Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys, Riemer Hess LLC, brings this complaint against Defendants First Unum Life Insurance Company and Provident Life and Casualty Insurance Company (collectively referred to as "Unum"). For the purposes of this Complaint, "Unum" shall include its successors, predecessors, parent companies, subsidiaries, affiliates, divisions, committees, and any related entities, as well as its current or former employees, agents, attorneys, accountants, officers, directors, trustees, or bankruptcy trustees, including but not limited to Unum Group, Provident, and its subsidiaries. In support of this Complaint, Plaintiff alleges as follows:

1.     This is an action for benefits arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, et seq., and to recover prejudgment interest, attorneys' fees, and costs.

2.     This Court has subject matter jurisdiction pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.  Under Section 502(f) of ERISA, 29 U.S.C. § 1132(f), this Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

1

3.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the breaches took place in this District and Unum resides in or may be found in this District.

## PLAINTIFF'S PARTICIPATION IN THE LONG-TERM DISABILITY PLAN

4.      Plaintiff is a highly accomplished 33-year-old attorney who last worked as an Associate Attorney of Paul Weiss, Rifkind, Wharton, and Garrison LLP ("Paul Weiss"). Paul Weiss is a multinational law firm that represents many of the world's largest and most important public and private corporations, asset managers and financial institutions, as well as clients in need of pro bono assistance.

5.      Paul Weiss is headquartered in New York.

6.      Plaintiff's date of birth is March 25, 1991.

7.      Plaintiff resides in Toronto, Ontario.

8.      At all relevant times, Plaintiff was and is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in Paul Weiss' group long term disability insurance plan under Policy Number LTD 44561 001 (the "LTD Plan Document"), which was underwritten by Unum, with a policy effective date of February 1, 2001.

9.      Paul Weiss provided Plaintiff with long term disability insurance coverage under the LTD Plan Document.

10.     The LTD Plan Document's governing jurisdiction is New York.

11.     At all relevant times, Unum is and has been the claims administrator of the LTD Plan Document within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

12.     At all relevant times, Unum is and has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

13.     At all relevant times, the LTD Plan Document is and has been an "employee welfare benefit plan" within the meaning of Section 3(1) of ERISA, 29 U.S.C. § 1002(1).

14. Long term disability benefits under the LTD Plan Document are insured by Unum.

15. Under the LTD Plan Document, Plaintiff was insured as Eligible Group 3.

16. The LTD Plan Document defines Group 3 employees as "Associates and those hired in Associate position with the title of Law Clerk, Foreign Lawyers, Visiting Lawyers, Directors/Management Group Employees, Practice Management Attorney, Practice Management Counsel and Technical Advisors in active employment."

17. The LTD Plan Document states:

All Employees not eligible in another group, you are disabled when Unum determines that:

- you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
- you have a 20% or more loss in your indexed monthly earnings due to the same sickness of injury; and
- during the elimination period, you are unable to perform any of the material and substantial duties of your regular occupation.

18. The LTD Plan Document also states, "After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience."

19. The LTD Plan Document defines Regular Occupation as "the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location."

20. The LTD Plan Document defines Gainful Occupation as "an occupation that is or can be expected to provide you with an income at least equal to 60% of your indexed monthly earnings within 12 months of your return to work."

21. For claimants who are under the age of 60 at the time of disability, the LTD Plan Document defines the Maximum Benefit Period of Payment to be until the age of 65.

3

22.     Plaintiff's LTD Plan Document has been eligible for Waiver of Premium since September 1, 2021.

## PLAINTIFF'S PARTICIPATION IN THE INDIVIDUAL DISABILITY INCOME PLAN

23.     In addition to long term disability benefits under the LTD Plan Document, Paul Weiss, offers eligible participants of the LTD Plan Document the opportunity to purchase supplemental individual disability coverage over and above the LTD coverage offered under the LTD Plan Document, known as, the Individual Disability Income Plan under Policy Number 36-600-5217243 (the "IDI Plan Document").

24.     At all relevant times, Provident (through its parent company Unum Group) is and has been the claims administrator of the IDI Plan Document within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A). Unless otherwise specified, hereinafter "Provident" and "Unum Group" are both referred to as "Unum."

25.     Paul Weiss, paid for the IDI Plan Document under a "list bill" arrangement. Unum sent Paul Weiss, a single bill for each employees' premiums.

26.     The IDI Plan Document's contract state is New York.

27.     The IDI Plan Document claim and appeal is managed from the LTD Plan Document claim, by Unum.

28.     The IDI Plan Document defines "Total Disability" or "Totally Disabled" as that because of Injuries or Sickness:

> 1. You are unable to perform the material and substantial duties of Your Occupation; and
> 2. You are not engaged in any other occupation; and
> 3. You are receiving Physician's Care. We will waive this requirement if we receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.
>
> After the end of the Your Occupation Period, then Total Disability also means:
> 4. You are unable to perform the material and substantial duties of Any occupation.

29.     The IDI Plan Document defines Your Occupation as "the occupation or occupations, as performed in the national economy, rather than as performed for a specific employer or in a specific location, in which You are regularly engaged at the time You become Disabled."

30.     The IDI Plan Document defines Any Occupation as "Any Occupation for which You are reasonably fitted based on education, training, or experience."

31.     Plaintiff's IDI Plan Document has been eligible for Waiver of Premium since February 10, 2021.

## PLAINTIFF EXHAUSTED HER ADMINISTRATIVE REMEDIES BECAUSE UNUM FAILED TO RENDER A TIMELY DECISION ON APPEAL

32.     To date, Unum has failed to render a decision in response to Plaintiff's November 5, 2024, appeal.

33.     Pursuant to ERISA's claims procedure regulations at 29 C.F.R. § 2560.503-1(i)(3)(i) and 29 C.F.R. § 2560.503-1(i)(1)(i), Unum had forty-five (45) days to provide Plaintiff with a final determination regarding her administrative appeal.

34.     Here, Unum's 45-day deadline to provide Plaintiff with a final determination regarding her administrative appeal, dated November 5, 2024, was December 20, 2024.

35.     Unum failed to render a determination on appeal review on or before December 20, 2024, the ERISA claims procedure regulation deadline.

36.     An administrator may exercise one 45-day extension if the administrator demonstrates "special circumstances" requiring an extension of time for processing the claim.  29 C.F.R. § 2560.503-1(i)(3)(i).

37.     The time periods for decision making are generally maximum periods, not automatic entitlements, and an extension may be imposed only for reasons beyond the control of the plan. *Salisbury v. Prudential Ins. Co. of Am.*, 238 F. Supp. 3d 444, 449 (S.D.N.Y. February 28, 2017).

38.     Here, by notice dated December 16, 2024, Unum informed Plaintiff that: "We need an extension of time of up to 45 days to complete our review.  This extension is needed because you may have additional information that is relevant to our evaluation and a response is required from you so that we can complete our appeal review."

39.     In Unum's December 16, 2024 letter it contained peer review reports from Malcom Spica dated November 18, 2024, that was not previously given to Plaintiff.

40.     Unum's December 16, 2024 notice does not satisfy the "special circumstance" requirements to exercise an extension beyond the 45-day deadline of December 20, 2024.

41.     No special circumstances existed to justify Unum's delay in rendering a final benefit determination on review.

42.     Merely stating the need for additional review or routine processing does not constitute a "special circumstance." Indeed, written notice of extension must identify any unusual   difficulties associated  with  the plaintiff's  claim, and  the  cited "special  circumstance"  must  truly  be "extraordinary."   *Aitken   v.   Aetna   Life   Ins.   Co.*,   2018   U.S.   Dist.   LEXIS   164008, *33 (S.D.N.Y. September 25, 2018).

43.     Mere invitation from an insurer for a beneficiary under a long-term disability (LTD) plan to submit additional documents they wished to have considered with regard to their disability is not a special circumstance warranting a 45-day extension of regulatory deadline applicable to review procedures. *Rhodes v First Reliance Std. Life Ins. Co.*, 670 F Supp 3d 119, 123 (S.D.N.Y. 2023).

44.     Courts in this Circuit have consistently rejected extensions for ERISA claims administrators based on routine review.

45.     "[A]n extension to permit additional, routine review is not a special circumstance warranting extension." *Rappaport v. Guardian Life Ins.Co. of Am.*, 2024 WL 4872736, at *13 (S.D.N.Y. Nov. 22, 2024) (citing cases).

46.    Unum's failure to render a decision by the ERISA claims procedure regulation deadline was not *de minimis*.

47.    Unum's failure to render a decision by the ERISA claims procedure regulation deadline was not for good cause.

48.    Unum's failure to render a decision by the ERISA claims procedure regulation deadline was not due to matters beyond Unum's control.

49.    Unum's failure to render a decision by the ERISA claims procedure regulation deadline was not in the context of an ongoing, good faith exchange of information between Unum and Plaintiff.

50.    Unum's failure to render a decision by the ERISA claims procedure regulation deadline is likely to cause prejudice or harm to Plaintiff.

51.    Unum's failure to render a decision by the ERISA claims procedure regulation deadline adversely affected the development of the administrative record.

52.    At of the date of this Complaint, no written decision on Plaintiff's appeal has been received from Unum; accordingly, Plaintiff is now deemed to have exhausted her administrative remedies under the Department of Labor Regulations and the Plan terms. *See* 29 C.F.R. § 2560.503-1(l)(2)(ii).

53.    29 C.F.R. § 2560.503-1(l)(2) provides that: "In the case of a claim for disability benefits, if the plan fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan, except as provided in paragraph (l)(2)(ii) of this section. Accordingly, the claimant is entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim. If a claimant chooses to pursue remedies under section 502(a) of the Act under such circumstances, the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary."

54.     As Unum failed to strictly adhere to all requirements pertaining to the timely issuance of a claim decision in Plaintiff's LTD claim, Plaintiff's claim for LTD benefits has been deemed denied and Plaintiff has fulfilled all conditions precedent to the filing of this lawsuit.

55.     Unum failed to timely investigate Plaintiff's claim and establish and follow reasonable claims procures to ensure a full and fair and timely review of Plaintiff's benefits claim in violation of 29 C.F.R. § 2560.503-1(I)(2).

56.     Plaintiff has been harmed and prejudiced by the unlawful delay in Unum's decision.

57.     Plaintiff has been forced to retain the services of the undersigned attorneys in order to prosecute this action and is obligated to pay a reasonable attorneys' fee.

58.     Unum has yet to provide further correspondence as of December 26, 2024.

## THE *DE NOVO* STANDARD OF REVIEW APPLIES TO PLAINTIFF'S GROUP LTD CLAIM

59.     Plaintiff's group LTD claim is subject to *de novo* review for two (2) independent reasons, detailed below.

### Failure to Strictly Adhere to ERISA's Claims Procedure Regulations

60.     First, Plaintiff' group LTD claim is subject to *de novo* review because Unum failed to strictly adhere to ERISA's claims procedure regulations during the administration process, and its failure to comply was neither inadvertent nor harmless.

61.     Upon information and belief, Unum has not adopted claim procedures in accordance with the Department of Labor regulations.

29 C.F.R. § 2560.503-1(i)(3)(i) and 29 C.F.R. § 2560.503-1(i)(1)(i)

62.     Unum violated 29 C.F.R. § 2560.503-1(i)(3)(i) and 29 C.F.R. § 2560.503-1(i)(1)(i) by failing to render a decision by the 45-day deadline, without citing any "special circumstances" sufficient to justify an extension under the regulations.

Unum Violated 29 C.F.R. § 2560.503-1(h)(4)

63.     Unum failed to provide a full and fair review because Unum failed to strictly adhere to all the requirements of ERISA's claims procedure regulations at 29 C.F.R. § 2560.503-1(h)(4).

64.     29 C.F.R. § 2560.503-1(h)(4)(i) requires:

> The plan administrator shall provide the claimant, free of charge, with any new or additional evidence considered, relied upon, or generated by the plan, insurer, or other person making the benefit determination (or at the direction of the plan, insurer, or such other person) in connection with the claim; such evidence must be provided as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided under paragraph (i) of this section to give the claimant a reasonable opportunity to respond prior to that date.

65.     In adding the requirements of 29 C.F.R. § 2560.503-1(h)(4)(i), the Department of Labor decided not to change the 45-day deadline by which the administrator is required to decide an appeal under 29 C.F.R. § 2560.503-1(i)(3)(i) and 29 C.F.R. § 2560.503-1(i)(1)(i). *See* Claims Procedure for Plans Providing Disability Benefits, 81 Fed. Reg. 92,326 (Dec. 19, 2016).

66.     During Unum's review of Plaintiff's appeal, Unum failed to provide copies of its consulting medical reviewers' reports as soon as possible and sufficiently in advance of the 45-day deadline, December 20, 2024.

67.     During Unum's review of Plaintiff's appeal, Unum provided copies of its consulting medical reviewers' reports to Plaintiff on December 16, 2024 – just four (4) days before the 45-day deadline on December 20, 2024.

68.     During the appeal, Unum did not articulate why it failed to provide its medical reviewers' reports to Plaintiff earlier.

69.     Four (4) days did not provide Plaintiff a reasonable opportunity to respond to Unum's medical reviewer reports on appeal.

70.     Plaintiff obtained a response to Unum's medical reviews from examining neuropsychologist Dr. Wilfred van Gorp by the December 20, 2024 deadline but was unable to secure one from her treating psychiatrist, Dr. Ryan Klein, by that date.

71.    By failing to provide Plaintiff with the new rationales for the final determination sufficiently in advance of the 45-day deadline, December 20, 20024, Unum denied Plaintiff a reasonable opportunity to respond in violation of 29 C.F.R. § 2560.503-1(h)(4)(ii).

72.    Unum's failure to strictly adhere to the requirements of 29 C.F.R. § 2560.503- 1(h)(4) caused and is likely to cause prejudice or harm to Plaintiff.

73.    Although Unum offered Plaintiff additional time to submit her responses to the medical reviews by January 6, 2025, Plaintiff should not have to endure such further delay in her claim caused by Unum's failures.

74.    Unum's offer to provide Plaintiff additional time to submit her responses by January 6, 2025 was not made in the interest in an ongoing, good faith exchange of information. The claim was well-supported by the unanimous opinions of all examining medical professionals, while Unum's peer reviewer reports are riddled with glaring errors, omissions, and bias. Moreover, Unum could have provided these reviews sufficiently in advance, avoiding unnecessary delays.

75.    Unum's failure to provide a full and fair review adversely affected the development of the administrative record.

Unum Violated 29 C.F.R. § 2560.503-1 (g)(1)(vii)(A)

76.    Unum failed to provide any explanation for disagreeing with the views of Plaintiff's treating psychiatrist regarding how work activity would put Plaintiff at further risk of further decompensation, suicidality, and self-harm, violating 29 C.F.R. § 2560.503-1 (g)(1)(vii)(A).

77.    During Unum's review of Plaintiff's appeal, Unum did not provide any explanation for disagreeing with Dr. Ryan Klein's assessment of Plaintiff's acute suicidality.

78.    During Unum's review of Plaintiff's appeal, Unum did not provide any explanation for disagreeing with the three (3) other medical professionals that assessed Plaintiff's suicidality and ideation, including Dr. Wilfred van Gorp, Dr. Roger S. Nathaniel, and Dr. Tanya Hauck.

79.     Unum's failure to provide an explanation for disagreeing with the four (4) examining medical professionals who unanimously concluded Plaintiff is disabled from her psychiatric conditions and confirmed her acute suicidal ideation, violated 29 C.F.R. § 2560.503-1 (g)(1)(vii)(A) adversely affecting the review of Plaintiff's claim.

Unum Violated 29 C.F.R. § 2560.503-1(b)(7)

80.     Unum failed to ensure that all claims and appeals for disability benefits are adjudicated in a manner designed to ensure the independence and impartiality of the persons involved in making the decision, violating 29 C.F.R. § 2560.503-1(b)(7).

81.     During Unum's review of Plaintiff's appeal, Unum did not have Plaintiff's file reviewed by an independent medical consultant.

82.     During Unum's review of Plaintiff's appeal, Unum only had the file reviewed by medical consultants that are employees of Unum.

83.     Reviewing consultants used and/or employed by Unum are subject to an inherent conflict of interest, compromising the objectivity of their evaluations.

84.     Upon information and belief, the reviewing consultants Unum used in connection with Plaintiff's appeal have conducted reviews in connection with numerous other individuals insured by Unum.

85.     Upon information and belief, Malcom Spica, Ph.D, has been conducting medical reviews as a consultant for Unum, at least since 2005.

86.     Unum knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only the interests of insurance companies and never individual claimants.

87.     Upon information and belief, Unum pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for Unum's insureds.

11

88.     Since the medical consultants derive substantial income from performing file reviews for Unum insureds, the medical consultants have an incentive to provide file reviews that Unum deems favorable in order to perform future file reviews for Unum, receive compensation, and promotion.

89.     Unum has failed to take active steps to reduce potential bias and to promote accuracy of its benefit determinations.

No Exceptions Apply to Justify Unum's Procedural Violations

90.     Where a plan grants the administrator discretion, a plan administrator's determination is deemed to be made without the exercise of discretion if the administrator fails to strictly adhere to all the requirements of the Claims Regulations, subjecting that determination to the Court's *de novo* review. 29 C.F.R. § 2560.503-1(l)(2)(i).

91.     The exception to the rule stated at 29 C.F.R. § 2560.503-1(l)(2)(i) is very limited, and the administrator has the burden of proving all the following:

a.  that the violation was *de minimis*;

b.  that the violation did not cause, and is not likely to cause, prejudice or harm to the claimant;

c.  that the violation was for good cause or due to matters beyond the control of the plan; and

d.  that the violation occurred in the context of an ongoing, good faith exchange of information between the plan and claimant.

92.     The exception, furthermore, will not apply if the violation is part of a pattern or practice of violations by the plan. See 29 C.F.R. § 2560.503-1(l)(2)(ii).

93.     Here, the *de novo* standard applies because Unum violated the regulations, as detailed above in paragraphs 57 through 89, and Unum cannot satisfy its burden of establishing the exception to the Regulation. *See* 29 C.F.R. § 2560.503-1(l)(2).

**Ineffective Discretionary Language**

94.     Unum's failures to strictly adhere to the regulations are alone sufficient to trigger *de novo* review, despite any arguable discretionary language in the policy.

95.     Here, the LTD Plan Document does not contain language granting Unum and Unum Group discretionary authority to determine eligibility for benefits or to interpret the terms therein.

96.     The LTD Plan Document does contain a Certificate that states "When making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy."

97.     The LTD Plan Document's Certificate is not an effective delegation of discretionary authority as the language grants discretion only to Unum and not Unum Group. Due to Unum Group making the determination on both the LTD Plan Document and IDI Plan Document, the delegation is improper.

98.     Unum also provided a purported plan document, titled "Additional Summary Plan Description Information" ("SPD").

99.     The SPD includes language purporting to grant Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan.

100.    The discretionary language in the SPD is not an effective delegation of discretionary authority.

101.    The LTD Plan Document does not incorporate the SPD.

102.    Any discretionary language contained in the SPD is not part of the LTD Plan Document.

**THE *DE NOVO* STANDARD OF REVIEW APPLIES TO PLAINTIFF'S IDI CLAIM**

103.    The IDI Plan Document does not contain language granting Unum, Unum Group, or Provident discretionary authority to determine eligibility for benefits or to interpret the terms therein.

104.    Attached to the IDI Plan Document is the signed Declaration that grants discretion:

If coverage applied for qualifies as a benefit under an employee welfare benefit plan established or maintained by the employer and governed by the Employee Retirement Income Security Act of 1974 (ERISA), I acknowledge that my employer delegates the Company, acting through Its agents, discretionary authority to make benefit determinations, resolve factual disputes, and interpret provisions of the plan. I will be entitled to appeal any benefit determination made by the Company that I disagree with pursuant to ERISA.

105.    The Declaration defines the "Company" as Provident Life and Casualty Insurance Company.

106.    Again, Declaration is not an effective delegation of discretionary authority as the language granting discretion is only to Provident or the "Company" and not Unum or Unum Group or its affiliates. Due to Unum Group making the determination on both the LTD Plan Document and IDI Plan Document, the delegation is improper.

107.    For these reasons, both Plaintiff's IDI claim is subject to a *de novo* review.

## PLAINTIFF'S REGULAR OCCUPATION

108.    Plaintiff's Regular Occupation (hereinafter the "Occupation") was as a Law Associate.

109.    She was last employed at Paul Weiss, Rifkind, Wharton, and Garrison LLP, one of the most prestigious law firms in the world, from 2016 until September 1, 2021. Paul Weiss is well-known and respected – both domestically and internationally.  It handles high-profile matters for some of the world's largest and most important public and private corporations, asset managers and financial institutions.

110.    Plaintiff has been admitted to the New York Bar.

111.    Plaintiff's Occupation is very demanding and stressful. The Occupation cannot be performed within a predictable, nine-to-five schedule. Her Occupation requires high-level mental and social demands, as detailed below.

112.    Plaintiff's Occupation required long hours, which were often unpredictable and had extremely tight deadlines. She often worked in excess of 60 hours per week. She was on-call 24/7, with the expectation to drop everything to meet the needs of the firm.

113.    Plaintiff's occupation required working with very tight deadlines, on matters where any error can have significant consequences.

114.    Plaintiff worked on high value transactions, usually worth hundreds of millions of dollars, sometimes tens of billions of dollars. This required extensive attention to detail.

115.    According to Unum's vocational consultant, the material duties of the Occupation include:

   a. Coordinates agreements with key strategic partners;

   b. Advises, as a subject matter expert, the Law Department, Compliance, Government Relations, and other business units;

   c. Advises and provides counsel to senior business clients in connection with sales practice issues and other issues;

   d. Negotiates, analyzes, and drafts contracts;

   e. Reviews applicable statutes and regulations;

   f. Assists with the preparation of responses to various regulatory inquiries;

   g. Supervises and manages regulatory examinations conducted by external agencies;

   h. Prepares and reviews registration statements of business development companies;

   i. May manage and obtain licenses in various states;

   j. May collaborate with business partners on healthcare insurance issues and healthcare regulatory issues;

   k. May prepare and report corporate information to the SEC; and

l.   May collaborate with a team of legal professionals.

116.   According to Unum's vocational consultant, the physical demands of the Occupation, "… would be in the sedentary range (primarily sitting with periods of standing and walking; and occasional lifting or applying force up to 10 lbs.)."

117.   According to Unum's vocational consultant, mental/cognitive demands of the Occupation specify it is skilled work requiring:

a.   high level reasoning/problem solving;

b.   independent judgment and decision making; interacting with people;

c.   directing, controlling, and planning activities of others; performing a variety of duties;

d.   involves frequent changes of tasks involving different aptitudes, procedures, or degrees of attentiveness without loss of efficiency or composure;

e.   high level verbal and written communication; and

f.   ability to influence people in their opinions and judgments.

118.   It was noted that Plaintiff "indicated that her work involved internal investigations for financial institutions, short term employment investigations, criminal and civil, and immigration pro-bono work. She indicated that her work required her to travel to Mexico on/off for 6 months, Tokyo and LA for trials."

119.   Unum's vocational consultant's report is overly simplistic, lacking detail and accuracy.

## PLAINTIFF'S BACKGROUND AND MENTAL ILLNESS DIAGNOSIS

Unum Approved Plaintiff's Disability Claims

120.   At all relevant times, Plaintiff suffers from serious mental illnesses, including treatment resistant depression and anxiety.

121.   Plaintiff has a history of attempting suicide.

16

122. Plaintiff has a history of being hospitalized multiple times for suicidality.

123. Plaintiff was most recently admitted to the hospital in 2024 due to suicidal thoughts.

124. At all relevant times, Plaintiff's severe symptoms include but are not limited to:

a. Active and chronic suicidal ideation;

b. Lack of motivation and diminished initiative;

c. Intolerance to stress and inability to handle routine workplace pressures;

d. Need to take frequent, unscheduled breaks throughout the day due to cognitive and emotional fatigue;

e. Need to lie down or rest unpredictably throughout the day due to chronic fatigue and low energy;

f. Unrefreshing, non-restorative sleep, contributing to persistent exhaustion.

g. Inability to function predictably, reliably, and consistently, both cognitively and emotionally;

h. Impaired memory, recall, and working memory, as documented in neuropsychological testing;

i. Significant difficulties with attention, concentration, and task persistence;

j. Chronic fatigue and reduced stamina, interfering with sustained work effort;

k. Inability to work under timed or high-pressure conditions;

l. Inability to interact with co-workers, supervisors, or clients in a reliable and professional manner due to emotional instability;

m. Impaired reading comprehension, problem-solving, and decision-making abilities;

n. Deficits in multitasking, adapting to changes in workflow, and monitoring or switching tasks effectively;

o. Severe brain fog and slowed cognitive processing;

p. Persistent emotional dysregulation, including severe anxiety and depressive episodes; and

q. Impaired ability to regulate emotions, leading to social withdrawal and irritability.

125. Plaintiff's symptoms are exacerbated by exposure to stressors of routine social interactions, stress, and high-level mental demands leads to further deterioration of her mental state.

126. Due to increasing psychiatric symptoms, Plaintiff ceased working as an Associate Attorney of Paul Weiss on or about September 2, 2021.

127. Plaintiff also filed a claim for Long Term Disability ("LTD") benefits and a claim for Individual Disability Insurance ("IDI") benefits (together, the "Claims"), alleging last day worked on on September 1, 2021.

128. On April 12, 2022, Unum approved Plaintiff's claim for LTD with date of disability September 2, 2021 and IDI benefits with date of disability February 15, 2021.

129. Unum began paying Plaintiff LTD and IDI benefits as of March 1, 2022 and August 14, 2021, respectively (following the LTD and IDI Plan's 180-day unpaid waiting period).

130. Plaintiff's LTD Plan Document became eligible for waiver of premium March 1, 2022 and IDI Plan Document became eligible for waiver of premium February 15, 2021. Since her date of disability, on September 2, 2021, Plaintiff continued to seek appropriate treatment for her conditions and continued to provide updated information as requested by Unum.

131. Unfortunately, since her date of disability, September 2, 2021, to present, Plaintiff's condition has not improved, and her psychiatric symptoms have worsened.

Unum Terminated Plaintiff's LTD and IDI Benefits

132. Unum terminated Plaintiff's LTD and IDI benefits, together, as of March 25, 2024.

133. Unum terminated Plaintiff's waiver of premium as of March 25, 2024.

134.    Unum's LTD and IDI benefit termination letter, dated March 25, 2024, stated that Unum concluded Plaintiff was no longer limited from performing the material and substantial duties of her occupation.

135.    The LTD and IDI benefits termination letter states: "Your Long Term disability policy has been eligible for Waiver of Premium since March 1, 2022 and that waiver will be terminated on March 25, 2024."

136.    Unum erroneously terminated Plaintiff's benefits based on the unreliable, unsupported, and incomplete opinions of its non-reviewing medical consultants, Dr. Lawrence Burstein and Dr. Stephen Gilman.

137.    Neither Dr. Burstein nor Dr. Gilman examined Plaintiff.  They only conducted a review of the paper file.

138.    Unum's reliance on Dr. Burstein and Dr. Gilman non-examining paper review reports was unreasonable.

139.    Dr. Burstein's report and addendum are dated January 8, 2024 and March 15, 2024.

140.    Dr. Gilman's report and addendum are dated January 11, 2024 and March 20, 2024.

141.    Unum relied on the reports and addendums of Dr. Burstein and Dr. Gilman in making Unum's decision to terminate Plaintiff's benefits.

142.    Unum's reliance on the non-examining report of Drs. Burstein and Gilman was unreasonable.

143.    The non-examining reports of Drs. Burstein and Gilman are unreliable because:

    a.    Their opinions were infected by conflict and bias;

    a.    Their conclusions lack foundation and are conclusory;

    b.    They each failed to consider Plaintiff's lack of significant improvement and suicidal ideation;

19

c. They both "cherry-picked" from Plaintiff's records, only acknowledging some improvement but ignoring persistent or worsened symptoms;

d. They failed to consider all relevant information, including Plaintiff's relevant own occupational demands; and

e. Their conclusions were inconsistent with the weight of the evidence.

144. Neither Dr. Burstein nor Dr. Gilman reviewed the complete file, given that they conducted their reviews prior to Plaintiff's submission of substantial additional evidence on appeal, as detailed further below.

## PLAINTIFF FILED AN ADMINISTATIVE APPEAL

145. Plaintiff filed a timely administrative appeal of Unum's termination of LTD and IDI benefits, and waiver of premiums under the LTD and IDI Plans by letter dated November 5, 2024 (the "Appeal").

146. On appeal, Plaintiff submitted substantial new evidence demonstrating that her conditions continued to satisfy the Plan's definition of disability beyond March 25, 2024, when her benefits were wrongfully terminated.

147. The evidence Plaintiff submitted with her appeal confirmed that, despite ongoing treatment, Plaintiff experienced no significant improvement, and her impairments continued to satisfy the Plan's definition of disability through the present. The new evidence included:

a. Neuropsychological Evaluation by Dr. Wilfred van Gorp (dated October 10-11, 2024) confirming severe symptoms of depression, recurring suicidal ideation, and cognitive impairments;

b. Narrative Letter by Dr. Ryan Klein (dated September 19, 2024) addressing concerns about non-participation in a prior clinical trial and explaining her ongoing treatment needs;

    c.  Narrative Letter by Dr. Roger S. Nathaniel (dated November 5, 2024) confirming symptoms of cognitive impairment, emotional dysregulation, and suicidal ideation since at least 2018;

    d.  Treatment Records by Dr. Ryan Klein (January 8, 2024, to November 1, 2024) documenting ongoing severe symptoms and functional impairments; and

    e.  Hospital Records from the Centre for Addiction and Mental Health (dated September 15, 2024) documenting Plaintiff's emergency room admission due to suicidal ideation.

Unum's Review of Plaintiff's Appeal

148.    On appeal, Unum had Plaintiff's file reviewed by non-examining paper reviewers, Malcolm Spica, Ph.D., and Jon Deam, MD, who concluded that after review of the updated medical records they did not support ongoing behavioral health restrictions or limitations.

149.    By letter dated December 16, 2024, Unum provided copies of the reports from Dr. Spica and Dr. Deam for Plaintiff to review and respond to.

150.    By letter dated December 20, 2023, Plaintiff submitted additional evidence, including a response from examining neuropsychological evaluator, Dr. Van Gorp, dated December 20, 2023, in direct rebuttal to Unum's paper reviewers.

151.    By letter to Unum dated December 20, 2024, Plaintiff stated that Unum had articulated no special circumstances to justify additional time for its review and asserted that Unum had sufficient evidence to reinstate benefits, effective immediately.

152.    By December 23, 2024, Plaintiff received no notice that Unum reinstated benefits.

153.    Dr. Spica's non-examining peer review report are unreliable because:

    a.  Dr. Spica wrongly stated that clinically significant persisting neurocognitive dysfunction due to any etiology was not substantiated by the quantified testing, and Plaintiff provided performances within normal limits across domains;

b. Dr. Spica improperly ignored the severe psychiatric abnormalities revealed by Plaintiff's 2024 neuropsychological evaluation, only commenting on how she did not have a neurocognitive disorder;

c. Dr. Spica wrongly concluded that restrictions and limitations due to a psychiatric condition were not supported;

d. Dr. Spica failed to consider Plaintiff's symptoms remain unpredictable, with depressive episodes that would prevent her from working on a reliable and consistent basis;

e. Dr. Spica's opinion was infected by conflict and bias;

f. Dr. Spica's conclusions lack foundation and are conclusory;

g. Dr. Spica never examined Plaintiff in-person;

h. Dr. Spica failed to consider all relevant information, including how Plaintiff's symptoms would affect her relevant own occupational demands;

i. Dr. Spica failed to consider the severity of Plaintiff's condition, including suicidal ideation and the lack of significant improvement;

j. Dr. Spica improperly concluded that Plaintiff's treatment and medication regimen are inconsistent with a severe psychiatric condition; and

k. Dr. Spica's conclusions are inconsistent with the weight of evidence.

154. Dr. Deam's non-examining peer review report are unreliable because:

a. Dr. Deam wrongly concluded that restrictions and limitations due to a psychiatric condition were not supported;

b. Dr. Deam failed to consider Plaintiff's symptoms remain unpredictable, with depressive episodes that would prevent her from working on a reliable and consistent basis;

c. Dr. Deam's opinion was infected by conflict and bias;

d. Dr. Deam's conclusions lack foundation and are conclusory;

e. Dr. Deam never examined Plaintiff in-person;

f. Dr. Deam failed to consider all relevant information, including how Plaintiff's symptoms would affect her relevant own occupational demands;

g. Dr. Deam failed to consider the severity of Plaintiff's condition, including suicidal ideation and the lack of significant improvement;

22

h. Dr. Deam improperly concluded that Plaintiff's treatment and medication regimen are inconsistent with a severe psychiatric condition; and

i. Dr. Deam's conclusions are inconsistent with the weight of evidence.

Plaintiff's Appeal Is "Deemed Denied"

155. Plaintiff repeats and re-alleges paragraphs 32 through 58 above regarding Unum's failure to render a timely decision on appeal.

156. As a result of Unum's failure to render a timely decision on appeal, the appeal has been "deemed denied."

157. Unum unreasonably relied on the unsupported opinions of biased, non-examining physicians. These physicians unreasonably found no support for restrictions and limitations inhibiting Plaintiff from performing activities consistent with her occupational demands, contrary to the unanimous conclusions of the medical professionals who have examined her.

158. Unum's refusal to approve Plaintiff's appeal is contrary to the preponderance of the evidence, unreasonable and contrary to the substantial evidence submitted by all examining medical professionals, and multiple psychiatrists at Centre for Addiction and Mental Health.

159. Plaintiff exhausted all administrative remedies under the Plan.

## THE MEDICAL EVIDENCE DEMONSTRATES PLAINTIFF CANNOT MEET THE DEMANDS OF HER OCCUPATION

160. The weight of the evidence demonstrates that Plaintiff cannot meet the demands of her occupation.

161. All medical professionals who examined Plaintiff have unanimously concluded that she is disabled from her psychiatric conditions.

162. The examining medical professionals who unanimously concluded Plaintiff cannot work include:

23

a. **Dr. Ryan Klein** – Dr. Klein is the current treating psychiatrist who provided treatment records and a narrative letter explaining Plaintiff's ongoing treatment for Treatment-Resistant Depression, highlighting her cognitive impairments, emotional dysregulation, and chronic suicidal ideation.

b. **Dr. Wilfred van Gorp** – Dr. Van Gorp conducted and independent Neuropsychological Evaluation dated October 10 and 11, 2024, concluding that Plaintiff's severe emotional difficulties and cognitive weaknesses render her unable to work in any gainful occupation.

c. **Dr. Roger S. Nathaniel** – Dr. Nathaniel is a psychiatrist who treated Plaintiff until late 2023 and confirmed that her symptoms, including cognitive impairment and suicidal ideation, have been ongoing since at least 2018.

d. **Dr. Tanya Hauck** – Dr. Hauck is an emergency physician at the Centre for Addiction and Mental Health, documented the Plaintiff's emergency room visit on September 15, 2024, due to a suicide plan, confirming her severe depression and suicidal thoughts.

163.    The evidence provided by the examining medical professionals – Dr. Klein, Dr. Van Gorp, Dr. Nathaniel, and Dr. Hauck – demonstrates that Plaintiff cannot perform the demands of her occupation. Specifically:

a. **Cognitive Demands**: Plaintiff cannot meet the cognitive demands of her regular occupation or any reasonable occupation because these would exacerbate her symptoms;

b. **Interpersonal Demands**: Plaintiff cannot tolerate routine interactions with others, including co-workers, supervisors, and the public; and

c. **Work Schedule Demands**: Plaintiff cannot reliably complete a normal workday or workweek on a sustained and consistent basis.

Evidence of Inability to Perform Cognitive Demands

164. Plaintiff's condition includes impaired concentration, memory, and problem-solving abilities, as documented by her medical providers, which make her unable to complete essential job functions.

165. Plaintiff's neuropsychological evaluation by Dr. Wilfred van Gorp on October 10-11, 2024, revealed significant deficits in executive functioning, including impaired inhibition, set-shifting, and cognitive flexibility, which prevent her from completing tasks requiring advanced reasoning or multitasking.

166. Dr. van Gorp documented slowed cognitive processing speed, impaired working memory, and weaknesses in sustained attention and task persistence, which render Plaintiff unable to maintain focus or productivity in any occupational setting.

167. Plaintiff's condition includes deficits in higher-order cognitive skills, such as abstract reasoning, organization, and judgment, which preclude her from adapting to workplace scenarios or solving complex problems effectively.

168. Plaintiff has undergone multiple treatment modalities, including transcranial magnetic stimulation (TMS), inpatient and outpatient therapy, and electroconvulsive therapy (ECT), yet her severe cognitive impairments remain unresolved, as documented by Dr. Klein.

169. Plaintiff's ongoing treatment records from Dr. Klein document persistent cognitive dysfunction, severe emotional dysregulation, and functional impairments related to depression and anxiety, confirming her inability to perform occupational tasks.

170. Dr. Roger S. Nathaniel's treatment history confirms Plaintiff has suffered from chronic cognitive impairments and emotional dysregulation since at least 2018, making her unable to fulfill professional responsibilities.

171. Plaintiff's psychiatric history includes multiple hospitalizations for suicidal ideation, during which medical providers observed disorientation, confusion, and impaired cognitive functioning, further evidencing her inability to perform sustained cognitive tasks.

172. Plaintiff's condition is marked by psychomotor slowing, reduced ability to initiate tasks, and impaired decision-making, as documented in medical records, which prevent her from maintaining consistent occupational performance.

Inability to Engage in Interpersonal Demands

173. Plaintiff's severe depression and anxiety, as documented in Dr. Klein's treatment records from January 8, 2024, to November 1, 2024, prevent her from tolerating routine interactions with co-workers, supervisors, or the public.

174. Dr. Klein's narrative letter dated September 19, 2024, describes Plaintiff's heightened emotional sensitivity and inability to handle interpersonal stress, which causes social withdrawal and makes workplace interactions untenable.

175. Neuropsychological testing by Dr. Wilfred van Gorp on October 10-11, 2024, identified deficits in cognitive flexibility and emotional regulation, which impair Plaintiff's ability to adapt to and engage in interpersonal dynamics.

176. Dr. van Gorp's evaluation also confirmed that Plaintiff's severe emotional difficulties, including anxiety and depression, exacerbate her inability to sustain professional relationships or tolerate routine workplace interactions.

177.     Plaintiff's repeated hospitalizations for suicidal ideation, as referenced in the hospital records from September 15, 2024, highlight her emotional instability and inability to engage with others in even minimal social settings without significant distress.

178.     Dr. Nathaniel's narrative letter, dated November 5, 2024, details Plaintiff's long-term struggle with emotional dysregulation and difficulty maintaining professional or personal relationships, dating back to at least 2018.

179.     Plaintiff's condition includes chronic emotional withdrawal and irritability, as observed by her treating physicians, which precludes her from maintaining the cooperative relationships required for any occupation.

180.     Plaintiff's ongoing symptoms of anxiety, feelings of hopelessness, and emotional instability, documented in both Dr. Klein's treatment records and the neuropsychological evaluation, make her unable to resolve workplace conflicts or navigate social expectations.

181.     Plaintiff currently remains under the care of Dr. Ryan Klein, as evidenced by treatment records dated January 8, 2024, to November 1, 2024. These records show ongoing regular treatment, addressing her conditions, which include depressed and anxious mood, sleep disturbance, feelings of hopelessness, and continued suicidal ideation

Evidence of Inability to Meet Work Schedule Demands:

182.     The evidence demonstrates that Plaintiff cannot meet the demands of a normal work schedule, including sustaining focus, productivity, and reliability over a typical workday or workweek, due to severe psychiatric and cognitive impairments.

183.     Plaintiff's neuropsychological evaluation by Dr. Wilfred van Gorp on October 10-11, 2024, confirms impairments in sustained attention, task persistence, and cognitive flexibility, which prevent her from maintaining consistent performance throughout a workday.

184.    Dr. van Gorp further documented severe emotional difficulties, including depression and anxiety, which exacerbate Plaintiff's inability to function reliably over the course of a regular work schedule.

185.    Dr. Klein's treatment records from January 8, 2024, to November 1, 2024, detail persistent symptoms of fatigue, low energy, and emotional dysregulation, which prevent Plaintiff from adhering to the demands of a consistent workweek.

186.    Plaintiff's emotional instability, including chronic depressive episodes and anxiety, as documented by Dr. Klein and Dr. Nathaniel, results in frequent disruptions that prevent her from completing a normal workday without interruption.

187.    Dr. Nathaniel's narrative letter dated November 5, 2024, confirms that Plaintiff's chronic symptoms since at least 2018, including emotional dysregulation and functional impairments, render her incapable of sustaining a regular work schedule.

188.    Plaintiff's psychiatric history includes repeated hospitalizations for suicidal ideation, during which her inability to manage emotional stressors and functional impairments made maintaining any work schedule impossible.

189.    Plaintiff's severe psychiatric symptoms, as detailed in hospital records from September 15, 2024, illustrate acute emotional and functional breakdowns, further demonstrating her inability to meet the consistency required for professional employment.

190.    Plaintiff's condition includes psychomotor slowing, difficulty initiating tasks, and prolonged recovery from stressors, as documented by her treating providers, which prevent her from fulfilling workplace schedule demands.

## COUNT I (LTD PLAN)

191.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 190 above.

192. Unum had no legal basis to terminate Plaintiff's benefits under the LTD Plan on March 25, 2024.

193. Under the terms of the LTD Plan, Unum agreed to provide Plaintiff with certain benefits under such plan, in accordance with the terms and conditions set forth therein.

194. To date, Unum has failed and refused to provide Plaintiff with the benefits under the LTD Plan to which she is rightfully entitled, from date of disability, September 2, 2021, through the present.

195. Plaintiff has satisfied all conditions precedent under the LTD Plan Document and is thus eligible to receive benefits beyond the termination date of March 25, 2024.

196. Unum's determination that Plaintiff is not Disabled within the meaning of the LTD Plan Document is contrary to the terms of the LTD Plan, ERISA, and the DOL Regulations issued thereunder, contrary to the evidence, unreasonable, and arbitrary and capricious.

197. The unlawful behavior of Unum is evidenced by the following:

   a. Denying benefit payments to Plaintiff when Unum knew that she was entitled to said benefits, in bad faith and contrary to the Plan;

   b. Unreasonably denying and withholding payments from Plaintiff knowing her claim for benefits was valid;

   c. Unreasonably failing to pay benefits without having any evidence, substantial or otherwise, supporting its decision to deny benefits;

   d. By failing to timely investigate Plaintiff's claim and establish and follow reasonable claims procures to ensure a full and fair and timely review of Plaintiff's benefits claim in violation of 29 C.F.R. § 2560.503-1(I)(2).

   e. Unum violated 29 C.F.R. § 2560.503-1(i)(3)(i) and 29 C.F.R. § 2560.503-1(i)(1)(i) by failing to render a decision by the 45-day deadline, without citing any "special circumstances" sufficient to justify an extension under the regulations.

   f. Ignoring Plaintiff's treating providers' assessments of her medical conditions and how they restrict and limit her from performing her Occupation, without any basis for doing so in violation of 29 C.F.R. § 2560.503-1(h)(2)(iv);

g.  Failing to explain the basis for disagreeing with the healthcare professionals treating Plaintiff, in violation of 29 C.F.R. § 2560.503-1(g)(1)(a);

h.  Failing to take into account all comments and documents submitted, in violation of 29 C.F.R. § 2560.503-1(h)(2)(iv);

i.  Failing to consult with a qualified healthcare professional in violation of 29 C.F.R. § 2560.503-1(h)(3)(iii);

j.  Relying on non-examining medical consultants to deny a claim supported by the treating providers and independent medical examiners;

k.  "Cherry-picking" and selectively highlighting certain factors in medical or reviewing reports to cast a favorable light on its position, while ignoring the conclusions of Plaintiff's treating providers regarding the conditions for which they render treatment;

l.  Completely disregarding Plaintiff's subjective complaints, her own assessment of her medical conditions, and how they restrict and limit her from performing the Occupation, in violation of 29 C.F.R. § 2560.503-1(h)(2)(iv);

m.  Engaging in a pattern of procedural irregularities to advance its own corporate interests in terminating benefits, to the detriment of the Plans' participants;

n.  Failing to provide a "full and fair review" as Unum was obligated to do pursuant to 29 C.F.R. § 2560.503-1(h)(4);

o.  Failing to provide Plaintiff with an adequate description of any additional material or information necessary to perfect her claim in violation of 29 C.F.R. §2560.503-1(g)(1)(iii);

p.  Failing to provide any explanation for disagreeing with the views of treating psychiatrist Dr. Klein regarding how work activity would put Plaintiff at further risk of further decompensation, suicidality, and self-harm, violating 29 C.F.R. § 2560.503-1 (g)(1)(vii)(A);

q.  Failing to maintain and utilize "reasonable claims procedures" as it was obligated to do pursuant to 29 C.F.R. § 2560.503-1(b), in violation of ERISA;

r.  Failing to follow its own internal claims administration policies and procedures;

s.  Consistently acting in its own corporate interests instead of those of the Plans and their participants; and

t.  Unum's unlawful behavior and violations of ERISA's procedural regulations were purposeful and harmful to Plaintiff.

198.     Plaintiff has been forced to bring the instant action as a direct result of Unum's unlawful benefit denial and violations of the Plans and ERISA.

199.     Under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), Plaintiff is entitled to recover disability benefits under the Plans that have not been paid to date, with interest, and those that will become due in the future.

## COUNT II (IDI PLAN)

200.     Plaintiff repeats and re-alleges the allegation set forth in paragraphs 1 through 199 above.

201.     Unum had no legal basis for terminating Plaintiff's IDI Plan benefits.

202.     Under the terms of the IDI Plan Document, Unum through Provident agreed to provide Plaintiff with certain benefits under such plan, in accordance with the terms and conditions set forth therein.

203.     To date, Unum has failed and refused to provide Plaintiff with the benefits under the IDI Plan Document, a benefit to which Plaintiff is rightfully entitled, from March 25, 2024, through the present.

204.     Plaintiff has satisfied all conditions precedent under the LTD Plan Document and is thus eligible to receive benefits beyond March 25, 2024.

205.     Unum's determination that Plaintiff is not Disabled within the meaning of the LTD Plan Document is contrary to the terms of the LTD Plan, ERISA, and the DOL Regulations issued thereunder, contrary to the evidence, unreasonable, and arbitrary and capricious.

206.     The unlawful behavior of Unum is evidenced by the following:

   a.   Denying benefit payments to Plaintiff when Unum knew that she was entitled to said benefits, in bad faith and contrary to the Plan;

   b.   Unreasonably denying and withholding payments from Plaintiff knowing her claim for benefits was valid;

c. Unreasonably failing to pay benefits without having any evidence, substantial or otherwise, supporting its decision to deny benefits;

d. By failing to timely investigate Plaintiff's claim and establish and follow reasonable claims procures to ensure a full and fair and timely review of Plaintiff's benefits claim in violation of 29 C.F.R. § 2560.503-1(I)(2).

e. Unum violated 29 C.F.R. § 2560.503-1(i)(3)(i) and 29 C.F.R. § 2560.503-1(i)(1)(i) by failing to render a decision by the 45-day deadline, without citing any "special circumstances" sufficient to justify an extension under the regulations.

f. Ignoring Plaintiff's treating providers' assessments of her medical conditions and how they restrict and limit her from performing her Occupation, without any basis for doing so in violation of 29 C.F.R. § 2560.503-1(h)(2)(iv);

g. Failing to explain the basis for disagreeing with the healthcare professionals treating Plaintiff, in violation of 29 C.F.R. § 2560.503-1(g)(1)(a);

h. Failing to take into account all comments and documents submitted, in violation of 29 C.F.R. § 2560.503-1(h)(2)(iv);

i. Failing to consult with a qualified healthcare professional in violation of 29 C.F.R. § 2560.503-1(h)(3)(iii);

j. Relying on non-examining medical consultants to deny a claim supported by the treating providers and independent medical examiners;

k. "Cherry-picking" and selectively highlighting certain factors in medical or reviewing reports to cast a favorable light on its position, while ignoring the conclusions of Plaintiff's treating providers regarding the conditions for which they render treatment;

l. Completely disregarding Plaintiff's subjective complaints, her own assessment of her medical conditions, and how they restrict and limit her from performing the Occupation, in violation of 29 C.F.R. § 2560.503-1(h)(2)(iv);

m. Engaging in a pattern of procedural irregularities to advance its own corporate interests in terminating benefits, to the detriment of the Plans' participants;

n. Failing to provide a "full and fair review" as Unum was obligated to do pursuant to 29 C.F.R. § 2560.503-1(h)(4);

o. Failing to provide Plaintiff with an adequate description of any additional material or information necessary to perfect her claim in violation of 29 C.F.R. §2560.503-1(g)(1)(iii);

p. Failing to provide any explanation for disagreeing with the views of treating psychiatrist Dr. Klein regarding how work activity would put Plaintiff at further

      risk of further decompensation, suicidality, and self-harm, violating 29 C.F.R. § 2560.503-1 (g)(1)(vii)(A);

q.   Failing to maintain and utilize "reasonable claims procedures" as it was obligated to do pursuant to 29 C.F.R. § 2560.503-1(b), in violation of ERISA;

r.   Failing to follow its own internal claims administration policies and procedures;

s.   Consistently acting in its own corporate interests instead of those of the Plans and their participants; and

t.   Unum's unlawful behavior and violations of ERISA's procedural regulations were purposeful and harmful to Plaintiff.

207.    Plaintiff has been forced to bring the instant action as a direct result of Unum's unlawful benefit denial and violations of the Plans and ERISA.

208.    Under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), Plaintiff is entitled to recover disability benefits under the IDI Plan Document that have not been paid to date, with interest, and those that will become due in the future.

## COUNT III (ATTORNEY FEES AND COSTS)

209.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 208 above.

210.    By reason of Unum's failure to pay Plaintiff's long-term disability and individual disability income insurance benefits due under the terms of the Plans, Plaintiff has been forced to retain attorneys to recover such benefits, for which she has and will continue to incur attorneys' fees.

211.    Plaintiff is entitled to recover reasonable attorneys' fees and the costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).

**WHEREFORE**, Plaintiff demands judgement against Unum as follows:

A.   For the amount of all long-term disability benefits due under the terms of the LTD Plan Document and IDI Plan Document that have not been paid, together with interest thereon;

B.      Clarifying and declaring that the LTD Plan Document and IDI Plan Document are obligated to pay Plaintiff long term disability benefits in the future as required by the Plans;

C.      For the amount of all waivers of premium benefits due under the terms of the LTD Plan Document and IDI Plan Document that have not been paid, together with interest thereon;

D.      Clarifying and declaring that the LTD Plan Document and IDI Plan Document are obligated to waive Plaintiff's premiums due in the future as required by the Plans;

E.      For the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g)(1); and

F.      For such other and further relief as may be deemed just and proper by the Court.

Dated: December 30, 2024

Jennfr Hess

By:     /s/ Ryan McIntyre
        Ryan McIntyre, Esq.
        RIEMER HESS LLC
        *Attorneys for Plaintiff*
        275 Madison Avenue, 26th Floor
        New York, NY 10016
        (212) 297-0700
        rmcintyre@riemerhess.com